UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

vs.                          Case No. 2:11-cv-116-FtM-29DNF

RADIUS CAPITAL CORP., ROBERT A. DIGIORGIO,

          Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant Robert A. DiGiorgio's Motion to Dismiss and Memorandum in Support (Docs. #7, 8) filed on May 15, 2011. The Securities and Exchange Commission filed its Opposition (Doc. #15) on June 17, 2011. This action arises out of defendants' allegedly false and misleading statements to the federal government and to investors in connection with the offer and sale of mortgage-backed securities. Defendant Robert A. DiGiorgio contends that the Complaint fails to state a claim against him and seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

**I.**

**A. Background: The Federal Mortgage-Backed Securities Program**

The Government National Mortgage Association (Ginnie Mae) is a corporation of the United States within the Department of Housing

---

[1] A motion for entry of clerk's default as to defendant, Radius Capital Corporation is pending before the Court.

and Urban Development.  12 U.S.C. § 1717(a)(2)(A).  Its powers are prescribed generally by Title III of the National Housing Act, as amended, Pub. L. 73-479, codified at 12 U.S.C. § 1716 et seq. Ginnie Mae administers a mortgage-backed securities program in which it authorizes certain qualifying private entities (Issuers), to issue securities backed by pools of federally insured home mortgage loans.  See 12 U.S.C. § 1723a(a)(authorizing Ginnie Mae to enter into contracts with private entities on terms it deems appropriate); see also Ginnie Mae Mortgage-Backed Securities Guide (the Guide)(outlining terms of the program and eligibility requirements of Issuers).[2]

To be eligible for the program, home loans must be insured by the Federal Housing Administration (FHA) or certain other federal agencies.[3]  Once a mortgage-backed security is sold to investors, the homeowners' monthly payments of principal and interest are "passed-through" from the Issuer to the investors.  See Guide, p. 1-1.  If the homeowner defaults, the Issuer must step in and make the pass-through payments itself or it can seek approval from Ginnie Mae to prepay the outstanding principal on the defaulting

---

[2]The Court takes judicial notice of the Ginnie Mae Mortgage-Backed Securities Guide (2003), available at: http://www.ginniemae.gov/guide/guidtoc.asp?subTitle=Issuers.

[3]In addition to FHA loans, loans which are insured by the Department of Veterans Affairs (VA), loans insured under the Rural Development (RD) program and loans which are guaranteed under Section 184 of the Housing and Community Development Act are eligible for the program.  See Guide, p. 1-5.

loans and thereby remove them from the pools. If the Issuer fails to fulfill these obligations, Ginnie Mae must do so. See 12 U.S.C. § 1721(g)("In the event the issuer is unable to make any payment of principal or of interest on any security guaranteed under the subsection, [Ginnie Mae] shall make such payment as and when due in cash."); see also Guide, Ch. 18.

**B. Allegations of the Complaint**

This brings us to the present case. The Securities and Exchange Commission (plaintiff or SEC) alleges the following material facts in the Complaint: Defendant Robert A. DiGiorgio (DiGiorgio) was the president, chief executive officer and sole stockholder of Radius Capital Corporation (Radius). (Doc. #1, ¶¶1, 26.) According to the SEC, DiGiorgio was intimately involved in every aspect of Radius' operations and directed the actions of Radius' employees. (Id., #6, ¶¶6, 24-26.)

Radius operated as a mortgage lender and issuer of mortgage backed securities. It made high-interest loans to low-income borrowers in Florida, California, and other states. Radius then pooled the mortgage loans and issued mortgage-backed securities (Radius MBS) to the investing public. These securities were guaranteed by Ginnie Mae. (Id., ¶¶1, 11.)

The SEC alleges that between December 2005 and October 2006, Radius issued and sold at least 15 mortgage-backed securities with a total principal amount of over $23 million, generating

approximately $1 million in profit for Radius and DiGiorgio (collectively defendants). (Id., ¶1.) The SEC further alleges that in connection with the offer and sale of these securities, defendants made materially false statements to Ginnie Mae and to the investing public. According to the SEC, defendants falsely represented that the loans backing Radius' securities were eligible for FHA insurance when they knew that the majority of the loans did not and could not meet FHA requirements. (Id., ¶17-18, 21-26.)

The mortgages backing Radius' securities eventually fell into default and in October 2006, Radius defaulted on its pass-through payments to investors. Because Ginnie Mae guaranteed the loans, it was required to assume Radius' obligations. In this case, the SEC alleges that Ginnie Mae was forced to remove the loans from the pools by prepaying the remaining principal on the defaulting loans. (Id., ¶¶5, 15.) Because these loans were uninsured, Ginnie Mae incurred several millions of dollars in losses (which it otherwise would have been able to recoup from the insurer). Additionally, as a result of the prepayment of principal, the investors lost the interest income which they would have otherwise earned. (Id.) The Complaint seeks injunctive relief, disgorgement of profits, and the imposition of civil penalties. (Id., ¶7.)

## II.

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the

light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Allegations of security fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting the fraud." The particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendants' alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." U.S. ex rel. Matheny v. Medco Health Solutions, Inc., --F.3d--, 2012 WL 555200, at *3 (11th Cir. Feb. 12, 2012)(quoting Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader

policy of notice pleading." Friedlander v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir. 1985).

The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

### III.

The SEC alleges two counts against the defendants. Count One alleges that defendants violated section 17(a) of the Securities Act and Count Two alleges that defendants violated section 10(b) of the Exchange Act and Rule 10b-5. Because the standard of proof is substantially the same, the Court will discuss both counts in tandem.

**A. Legal Principles**

Section 17(a) of the Securities Act, section 10(b) of the Exchange Act and Rule 10b-5, all proscribe fraudulent conduct in the purchase or sale of securities. Section 10(b) of the Exchange Act makes it unlawful:

> ... for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—... (b) To use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC's Rule 10b-5, promulgated thereunder, states that,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "Section 10(b) was designed to protect investors involved in the purchase and sale of securities by requiring full disclosure." SEC v. DCI Telecomms., Inc., 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000)(citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477-78 (1977)). The scope of liability is the same under section 10(b) and Rule 10b-5. SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 n. 17 (11th Cir. 2007); SEC v. Zandford, 535 U.S. 813, 816 n. 1 (2002).

To prove an "untrue statement"[4] violation under Rule 10b-5(b), the SEC must show: (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter. Merch. Capital, 483 F.3d at 766 (citing Aaron v. SEC, 446 U.S. 680, 695 (1980)).

Section 17(a) "requires substantially similar proof." SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008)(quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996)). Section 17(a) of the Securities Act provides that it is unlawful for any person, directly or indirectly, in the offer or sale of securities:

> (1) to employ any device, scheme, or artifice to defraud[5], or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a

---

[4]The Court will focus on the "untrue statement" subsections of the relevant statutes because the basis of DiGiorgio's entire motion is that he did not "make" any false statements. The Court does not address the sufficiency of the SEC's allegations under any of the other subsections. But see U.S. v. Yeaman, 194 F.3d 442, 453 (3d Cir. 1999)(acknowledging that securities fraud statute creates a single offense and delineates three alternative ways of violating the statute).

[5]The state of mind element is not at issue in DiGiorgio's motion, but the Court notes that the proof for this element differs among the various subsections. Section 17(a)(1) includes the terms "device," "scheme" and "artifice" which the Supreme Court has interpreted to mean "knowing or intentional misconduct" and, thus requiring the SEC to allege that defendants acted with scienter. Aaron, 446 U.S. at 696-97. Sections 17(a)(2)and 17(a)(3) require only negligence. See Merch. Capital, 483 F.3d at 766; see also Wolfson, 539 F.3d at 1257 ("The principal difference between § 17(a) and § 10(b) lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under §17(a)(2) or §17(a)(3).").

-8-

> material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

"[T]here is a salient difference between the language of [Rule 10b-5(b)] and section 17(a)[2] with respect to the types of conduct that may render a person liable for a false statement." SEC v. Tambone, 597 F.3d 436, 444 (2010).[6] "Section 17(a)(2) makes it unlawful 'to obtain money or property **by means of** any untrue statement of material fact,' whereas Rule 10b-5[b] makes it unlawful 'to **make** any untrue statement of a material fact.'" Id. (emphasis added)(citations omitted). Thus, section 17(a)(2) may be read to cover the "use" of an untrue statement (regardless of who created or composed the statement), whereas Rule 10b-5(b) requires the SEC to allege and prove that defendants "made" an untrue statement. Id. at 444-45.

The Supreme Court recently elaborated on what constitutes the "making" of a false statement for purposes of section 10(b) and

---

[6]SEC v. Tambone, 550 F.3d 106 (1st Cir. 2009), rehearing en banc granted, opinion withdrawn, 573 F.3d 54 (2009), reinstated in relevant part, 597 F.3d 436, 444 (2010).

Rule 10b-5(b).[7] In <u>Janus Capital Grp., Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296 (2011), the court stated:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.

<u>Janus</u>, 131 S. Ct. at 2302.

With these principles in mind, the Court turns to the sufficiency of the Complaint's allegations.

**B.   Sufficiency of the Complaint**

DiGiorgio admits that he participated in the Ginnie Mae MBS program (Doc. #8, p. 5.) and does not dispute allegations in the Complaint that he made use of the instrumentalities of interstate commerce.  (Doc. #1, ¶10.)  DiGiorgio also does not challenge the allegations regarding his state of mind, including the element of

---

[7]If the SEC establishes that defendants "made" an untrue statement, then by default, section 17(a)(2)'s "by means of" requirement is also met. See <u>Tambone</u>, 550 F.3d at 128, n.30 ("[A]lthough it is possible to violate section 17(a)(2) without 'making' a statement as required by Rule 10b-5, if defendants have 'made' false statements within the meaning of 10b-5, that conduct will always satisfy the 'by means of' element of 17(a)(2) liability.")

-10-

scienter (or negligence under subsections 17(a)(2) and 17(a)(3)). Additionally, DiGiorgio does not contend that the representations at issue were immaterial. Therefore, the only element the Court will address is whether the Complaint adequately alleges that DiGiorgio "made" or, in the case of section 17(a)(2) obtained money or property "by means of", a false statement.[8]

The SEC alleges that in connection with the issuance of Radius MBS, DiGiorgio lied to Ginnie Mae and to the public. The misrepresentations DiGiorgio allegedly made were contained in the Ginnie Mae contract documents (Doc. #1, ¶¶6, 16, 17) and the prospectuses distributed to investors. (Id., ¶¶3, 18).

**1) False Statements in Ginnie Mae Contract Documents.**

To obtain Ginnie Mae's guarantee, an Issuer is required to sign and submit several contract documents. Among those documents, three are relevant to the instant motion: the Application for Approval to become a Ginnie Mae Mortgage-Backed Securities Issuer (the Application), the Schedule of Subscribers and Ginnie Mae Guaranty Agreement (Form 11705), and the Schedule of Pooled Mortgages (Form 11706).

The Application provides:

"The undersigned applicant by submitting this application agrees to issue and administer Ginnie Mae mortgage-backed

---

[8] Unlike private litigants, the SEC need not prove reliance or injury under § 17 or § 10(b). Wolfson, 539 F.3d at 1258 n.14, 1260 n.17.

-11-

securities and service pooled mortgages in accordance with Section 306(g) of the National Housing Act, its applicable regulations, and the applicable [Guide]". (Doc. #1, ¶16; Doc. #15-5, p.2.)

Form 11705 provides:

"The Issuer covenants and warrants that each of the Mortgages is eligible under section 306(g) of the National Housing Act and the Guide to back the Securities."[9] (Doc. 1, ¶17; Doc. #15-4, p. 5, § 3.03.)

Form 11705 also incorporates the information contained on Form 11706 and states that the Issuer "certifies to the accuracy of the information" contained therein. See Doc. #15-1, p. 1. Form 11706 is a fillable form which requires the Issuer to provide Ginnie Mae with information about the loans in the pool. In a box titled "Distribution of all Loans in Pool", the Issuer must input each type of loan (FHA, VA, etc.) and the total aggregate principal amount of the loans in the pool. Form 11706 also requires the Issuer to enter a loan-specific case number (FHA, VA, RD or § 184), identifying each loan as eligible under the Ginnie Mae program. See, e.g., Doc. #15-1, p.2; Guide, App. 111-7, p. 2.

Because section 306(g), the regulations, and the Guide each provide that the loans backing Ginnie Mae guaranteed securities must be federally insured, the SEC contends that by preparing and

---

[9]Technically, this quoted language comes from another document which is incorporated into Form 11705. The incorporated document is the Single Family Level I Mortgage-Backed Securities Guaranty Agreement. (Doc. #15-4; Guide, App. III-15.) It is one of several detailed guaranty agreements contained in the Guide. Which guaranty agreement is incorporated into Form 11705 depends on the underlying pool type. Here, the pool type is single-family.

submitting the above documents, when he knew that the majority of the loans were not and could not have been federally insured, DiGiorgio[10] "made" false representations and thereby committed fraud. In support of this claim, the SEC alleges that approximately 70% of the loans backing the Radius MBS fell "far below" FHA requirements.[11] The SEC further alleges that DiGiorgio directed Radius' employees to ignore FHA underwriting guidelines when evaluating loan applications and that he personally approved low-quality, improperly documented or fraudulent loans that were ineligible for FHA insurance. (Doc. #1, ¶6.) The SEC asserts that many of the loans included invalid social security numbers, inflated appraisals, falsified employment and income documentation, straw-man purchases, and violations of anti-flipping requirements. (Doc. #1, ¶23.) Despite these deficiencies, the SEC alleges that DiGiorgio falsely identified the loans as "FHA" and entered false FHA case numbers on Form 11706. (Doc. #1, ¶17; Doc. #15-1, pp.2-3.)

With respect to the contract documents (the Application, Form 11705 and Form 11706), DiGiorgio makes two arguments for dismissal.

---

[10]The Complaint alleges that DiGiorgio was intimately involved in every aspect of Radius' operations and directed the actions of Radius' employees. (Doc. #1, #6, ¶¶6, 24-26.) Thus, according to the SEC, all aspects of Radius' alleged conduct can be directly attributed to DiGiorgio. (Doc. #15, p.3, n.2.) DiGiorgio does not challenge this contention in his motion.

[11]"Of the 154 loans underlying these securities, more than 100 were not insured." (Doc. #1, ¶21.)

First he contends that he did not "make" any misrepresentations because he merely filled out forms which were pre-prepared by Ginnie Mae. The statements in those forms, he argues, were "made" by Ginnie Mae and they were not untrue. The Court is unpersuaded by this argument. The Complaint alleges that the information supplied by DiGiorgio himself was false, not the pre-printed statements on the Ginnie Mae forms. Assuming the facts alleged in the Complaint are true, the information DiGiorgio added to Form 11706 constituted misrepresentations. Additionally, by submitting the Application, Form 11705, and Form 11706, DiGiorgio certified the accuracy of the statements contained therein and thereby "made" an actionable representation. See SEC v. DAS, No. 8:10cv102, 2011 WL 4375787, at *6 (D. Neb. Sept. 20, 2011)(finding that CFOs who signed and certified accuracy of documents which incorporated by reference statements in proxy materials were making a representation); SEC v. Carter, 2011 WL 5980966, at *2 (N.D. Ill. Nov. 28, 2011)(finding that CEO who approved press releases was the maker of the statements contained therein); see also In re Cabletron Sys., Inc., 311 F.3d 11, 38 (1st Cir. 2002)(holding that securities fraud defendants may be liable for third party statements when they expressly or impliedly adopt the statement or "place their imprimatur" on it).[12]

---

[12]To the extent DiGiorgio implies that a claim cannot be stated against him because it was the responsibility of a Document
(continued...)

Second, DiGiorgio argues that identifying the mortgages as "FHA" loans was not a misrepresentation because the Ginnie Mae program did not technically require that the underlying loans be FHA insured at the time Radius sought Ginnie Mae's guaranty. According to DiGiorgio, Radius had one year from the date the first pool issued (December 1, 2005) to obtain insurance. Thus, in October 2006, when Ginnie Mae suspended Radius from the MBS program, Radius had one more month to obtain federal insurance on the underlying loans. (Doc. #8, p. 8.) The Court is not persuaded. The SEC alleges that the loans underlying the Radius MBS contained clear deficiencies that made them ineligible for FHA insurance. Thus, according to the Complaint, the loans were not FHA insured nor could they ever become FHA insured. DiGiorgio's argument that he did not make a technically false statement is unavailing. See SEC v. Gabelli, 653 F.3d 49, 57 (2d Cir. 2011)("[S]o-called 'half-truths'-literally true statements that create a materially misleading impression - will support claims for securities fraud.")

The Court finds that the Complaint's allegations sufficiently allege that DiGiorgio made false statements in the Ginnie Mae

---

[12](...continued)
Custodian to certify that the loans were federally insured, the Court is unpersuaded. (Doc. #8, p.7.) Even if that were true, it does not absolve DiGiorgio of his responsibility under the contract documents to certify the accuracy of the information he supplied to Ginnie Mae.

contract documents under section 17(a), section 10(b) and Rule 10b-5. Therefore, with respect to the contract-related representations, DiGiorgio's motion will be denied as to both counts.

**2) False Statements in Prospectuses**.

The SEC contends that it has alleged sufficient facts to support that DiGiorgio "made" false statements in the prospectuses to support a claim under section 17(a) and section 10(b)/Rule 10b-5. Alternatively, the SEC argues that, at minimum, it has alleged sufficient facts to demonstrate that DiGiorgio obtained money or property "by means of" false statements in the prospectuses. Although such "by means of" allegations would be insufficient under section 10(b) and Rule 10b-5(b), they would support a claim under section 17(a)(2).

The Complaint contains minimal allegations regarding the prospectuses. These allegations are quoted in their entirety below: "Defendant's false assurances were also included in the prospectuses provided to potential purchasers and the investment community. The prospectuses accompanying each of the Radius mortgage-backed securities stated that the underlying mortgage loans were federally insured." (Doc. #1, ¶3.) The Complaint goes on to state that, "Based on Radius' representations, Ginnie Mae agreed to guarantee Radius securities. A prospectus was then issued for each security and distributed to potential investors.

Each prospectus stated that Radius represented that the underlying mortgages were 'insured by the Federal Housing Administration ("FHA")' or another federal agency. The prospectus also identified the specific mortgage pool backing the security." (Doc. #1, ¶18.) Finally, the Complaint alleges that DiGiorgio "knew that the prospectuses falsely stated that the underlying loans were federally insured." (Doc. #1, ¶26.)

Unlike the contract-related representations, the Complaint does not explain the process by which prospectuses are issued and distributed and does not identify who was ultimately responsible for the content of the prospectuses in this matter. Most glaringly, the Complaint does not explain the defendants' specific roles in this process. The SEC simply states that DiGiorgio made misrepresentations to Ginnie Mae in the contract documents and "a prospectus was then issued and distributed." Such allegations do not meet the particularity requirement of Rule 9(b) because they leave open the possibility that a person other than DiGiorgio was responsible for the communication of the content of the prospectuses. If the SEC wishes to use the statements in the prospectuses as a basis for liability under section 10(b) and Rule 10b-5(b)(i.e., to argue that DiGiorgio "made" false statements therein), it must allege facts which demonstrate that he had "ultimate authority over the statement, including its content and whether and how to communicate it." See Janus, 131 S. Ct. at 2302.

Thus, the Court finds that the statements in the prospectuses are insufficient to state a claim under section 10(b) and Rule 10b-5(b). This aspect of Count II will be dismissed without prejudice.

The prospectus-related allegations are, however, sufficient to support a claim under section 17(a)(2). As stated above, section 17(a)(2) may be read to cover the "use" of an untrue statement (regardless of who created or composed the statement). Tambone, 597 F.3d at 444-45. The following statement was part of the pre-printed prospectuses: "The Issuer has represented that the Mortgages are single-family, level payment mortgages ("SF") insured by the Federal Housing Administration ("FHA") or guaranteed by the Department of Veterans Affairs ("VA"), the Rural Housing Services ("RHS") or the Secretary of Housing and Urban Development." (Doc. #15-1, p. 8.) The Complaint alleges that DiGiorgio knew this statement was false and that a prospectus accompanied each Radius MBS. The form also states "Issued by: RADIUS CAPITAL CORPORATION DBA HOME MORTGAGE OF AMERICA." (Doc. #15-1, p. 6.) Although, the Court declines to make any assumptions about who controlled the content, issuance and distribution of the prospectuses, the Court finds that these allegations are sufficient to demonstrate that DiGiorgio, at minimum, "used" a statement he knew to be false to obtain money or property.

Therefore, with respect to the prospectus-related representations, DiGiorgio's motion will be denied as to Count One

(section 17(a)) and granted as to Count Two (section 10(b) and Rule 10b-5).

Accordingly, it is now

**ORDERED**:

1. Defendant Robert A. Digiorgio's Motion to Dismiss and Memorandum in Support (Doc. #7) is **GRANTED** in part and **DENIED** in part as follows:  The claim in Count II that DiGiorgio made false statements in the prospectuses is dismissed without prejudice.  The motion is otherwise denied.

2. Should the SEC wish to amend its prospectus-related allegations under Count II, it may file a second amended complaint **WITHIN TWENTY ONE (21) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___1st___ day of March, 2012.

JOHN E. STEELE
United States District Judge

Copies: Counsel of record