UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.    Case No. 2:11-cv-116-FtM-29DNF

RADIUS CAPITAL CORP., ROBERT A. DIGIORGIO,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Second Amended Motion for Summary Judgment (Doc. #146) filed on December 7, 2012. Plaintiff filed a Response in Opposition (Doc. #147) on December 17, 2012. On January 10, 2013, defendant filed a Reply (Doc. #152). For the reasons set forth below, the motion is denied.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010)(citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")

(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

Plaintiff Securities and Exchange Commission (plaintiff or SEC) filed a Complaint (Doc. #1) against defendants Radius Capital Corp. (Radius) and Robert Di Giorgio (Di Giorgio or defendant)[1] for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  The SEC seeks a judgment from the Court enjoining each defendant from future violations of the anti-fraud provisions of the federal securities laws, requiring disgorgement of the illicit gains obtained from the fraud, imposing a monetary penalty, and enjoining each defendant from offering or selling mortgage-backed securities issued by any entity in which Di Giorgio owns or controls.

The relevant undisputed facts are as follows:[2] Di Giorgio was the founder of Radius and was its chief executive officer from 1996

---

[1] A default was entered against Radius on March 6, 2012. (Doc. #48.) The Second Amended Motion for Summary Judgment is brought on behalf of Di Giorgio, who is proceeding *pro se*.

[2] Defendant failed to provide the Court with a statement of undisputed facts and, thus, the Court relied on the Stipulations of Fact (Doc. #156-6) attached to the Final Joint Pretrial Statement.

to 2006. Radius operated as a mortgage lender and issuer of mortgage backed securities. The Government National Mortgage Association (Ginnie Mae) is a corporation of the United States within the Department of Housing and Urban Development. Ginnie Mae guarantees the payment of principal and interest on securities backed by home loans made by private lenders but insured by the Federal Housing Administration (FHA) or certain other federal agencies. Di Giorgio knew that Ginnie Mae regulations required that Ginnie Mae guaranteed securities issued by Radius had to be backed only by loans that were or would be FHA insured. Ginnie Mae guaranteed the 15 Radius mortgage-backed securities at issue in this case, which were issued and sold between December 2005 and October 2006 and had a total principal amount of over $23 million. During this period, the mortgage-backed securities were sold only to Countrywide and Wachovia. In October 2006, Radius stopped originating loans and issuing mortgage-backed securities, and defaulted on its commitment to Ginnie Mae. When Radius defaulted, Ginnie Mae was forced to step in and pay the investors the pass-through payments, and pay off any defaulted loans.

### III.

Section 17(a) of the Securities Act, section 10(b) of the Exchange Act, and Rule 10b-5 all proscribe fraudulent conduct in the purchase or sale of securities. Section 10(b) of the Exchange Act makes it unlawful:

> ... for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—... (b) To use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC's Rule 10b-5, promulgated thereunder, states that,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "Section 10(b) was designed to protect investors involved in the purchase and sale of securities by requiring full disclosure." SEC v. DCI Telecomms., Inc., 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000)(citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477-78 (1977)). The scope of liability is the

same under section 10(b) and Rule 10b-5. SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 n. 17 (11th Cir. 2007); SEC v. Zandford, 535 U.S. 813, 816 n. 1 (2002). To prove a violation under Rule 10b-5(b), the SEC must show: (1) that defendant engaged in one of the three prohibited types of conduct set forth in Rule 10b-5, (2) in connection with the purchase or sale of securities, (3) made with scienter. Merch. Capital, 483 F.3d at 766 (citing Aaron v. SEC, 446 U.S. 680, 695 (1980)).

Section 17(a) "requires substantially similar proof." SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008)(quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996)). Section 17(a) of the Securities Act provides that it is unlawful for any person, directly or indirectly, in the offer or sale of securities:

> (1) to employ any device, scheme, or artifice to defraud[3], or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

---

[3] The Court notes that the proof for this element differs among the various subsections. Section 17(a)(1) includes the terms "device," "scheme" and "artifice" which the Supreme Court has interpreted to mean "knowing or intentional misconduct" and, thus requiring the SEC to allege that defendants acted with scienter. Aaron, 446 U.S. at 696-97. Sections 17(a)(2) and 17(a)(3) require only negligence. See Merch. Capital, 483 F.3d at 766; see also Wolfson, 539 F.3d at 1257 ("The principal difference between § 17(a) and § 10(b) lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under §17(a)(2) or §17(a)(3).").

>> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

"[T]here is a salient difference between the language of [Rule 10b-5(b)] and the language of section 17(a)[2] with respect to the types of conduct that may render a person liable for a false statement." SEC v. Tambone, 597 F.3d 436, 444 (1st Cir. 2010).[4] "Section 17(a)(2) makes it unlawful 'to obtain money or property **by means of** any untrue statement of material fact,' whereas Rule 10b-5(b) makes it unlawful 'to **make** any untrue statement of a material fact.'" Id. (emphasis added)(citations omitted). Thus, section 17(a)(2) may be read to cover the "use" of an untrue statement (regardless of who created or composed the statement), whereas Rule 10b-5(b) requires the SEC to allege and prove that defendants "made" an untrue statement. Id. at 444-45.

The Supreme Court recently elaborated on what constitutes the "making" of a false statement for purposes of section 10(b) and

---

[4] SEC v. Tambone, 550 F.3d 106 (1st Cir. 2009), rehearing en banc granted, opinion withdrawn, 573 F.3d 54 (2009), reinstated in relevant part, 597 F.3d 436, 444 (2010).

Rule 10b-5(b).[5]  In <u>Janus Capital Grp., Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296 (2011), the court stated:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.

<u>Janus</u>, 131 S. Ct. at 2302.

### IV.

In his motion, defendant asserts the following: (1) defendant's alleged conduct was not "in connection with" or "in the offer and sale of" a security; (2) defendant's alleged conduct was not part of a fraudulent scheme; (3) defendant's alleged false statements were not material; (4) defendant was not in control of

---

[5]If the SEC establishes that defendants "made" an untrue statement, then by default, section 17(a)(2)'s "by means of" requirement is also met. <u>See</u> <u>Tambone</u>, 550 F.3d at 128, n. 30 ("[A]lthough it is possible to violate section 17(a)(2) without 'making' a statement as required by Rule 10b-5, if defendants have 'made' false statements within the meaning of 10b-5, that conduct will always satisfy the 'by means of' element of 17(a)(2) liability.").

Radius during the relevant time period; and (5) defendant's conduct did not involve scienter.  (Doc. #146.)

### A. "In Connection With" or "In the Offer and Sale of" a Security

To determine whether these actions occurred "in connection with" the purchase or sale of securities, the SEC need only show "a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide."  SEC v. Zandford, 535 U.S. at 825; accord Jacobini v. KPMG LLP, 314 F. Supp. 2d 1172, 1179 (M.D. Fla. 2004).  This standard is to be interpreted flexibly to effect the purposes of the protective statute.  Zandford, 535 U.S. at 819.

Defendant asserts that his alleged conduct was not "in connection with" or "in the offer and sale of" a security.  In support, defendant argues: (1) that his security sales were a private offering to highly sophisticated investors and as a result were exempt from a document disclosure requirement; (2) the securities were Ginnie Mae securities exempt under Section 3A of the Securities Act; (3) the securities were entitled to a registration exemption under Section 4(6) of the Securities Act; (4) the documents at issue, the Ginnie Mae contracting documents and the Ginnie Mae prospectus, were never seen or distributed to any investor; and (5) the false statements in the Ginnie Mae contracting documents were not "in the offer and sale of" or "in

connection with" a security.[6] (Doc. #146, pp. 2-10; Doc. #152, pp. 2-5.) In response, SEC argues that (1) all of the conduct at issue was part and parcel of securitizing Radius loans on the false pretense that the loans were, or would be, FHA insured and but for the misrepresentations, defendant would not have been able to pool the loans into securities through the Ginnie Mae MBS program and sell them to investors; (2) the private offering registration exemption cited by defendant does not apply because the aggregate amount sold is above the threshold and defendant made no effort to comply with private offering regulations; (3) even if the exemptions applied, the anti-fraud provisions of the Securities Act would still apply; (4) whether the sale was to sophisticated investors has no significance; and (5) the misstatements did not have to be communicated directly to investors for defendant to be liable. (Doc. #147, pp. 10-13.) After drawing all possible inferences in favor of the SEC, the Court finds that there remain genuine issues of material fact as to whether the false representations were "in connection with" or "in the offer and sale of" a security. Therefore, summary judgment must be denied as to this issue.

---

[6]Defendant also argues that the Complaint only alleges that Radius, not defendant, submitted the forms and no triable fact exists that individually defendant directed, authored, edited, reviewed, or approved anything that violates the alleged acts, nor did SEC allege that defendant is liable as a control person under Section 20(a). (Doc. #146, p. 6.)

### B. Participation in a Fraudulent Scheme

Defendant asserts that the Court should grant summary judgment as to SEC's claims for "scheme liability" under Rule 10b-5 and 17(a). (Doc. #146, pp. 11-12; Doc. #152, pp. 10-11.) Defendant argues that SEC has not established "scheme liability" because it failed to provide evidence beyond the alleged false statements and in support cites cases and states, without citation, in order to find liability in the Ninth Circuit that "defendant must have engaged in conduct that had the <u>principal purpose and effect</u> of creating a false appearance of fact in furtherance of the scheme." (<u>Id.</u>)  In response, SEC argues that there is substantial evidence that defendant controlled Radius and "participated in a scheme to originate deficient loans, pool them into securities and obtain a federal government guaranty on false pretenses, and ultimately pass the securities off as safe investments." (Doc. #147, pp. 19-20.) The Court finds that defendant has not established that there remains no genuine issue of material fact as to whether he participated in a fraudulent scheme. Therefore, summary judgment must be denied as to SEC's claims for "scheme liability" under Rule 10b-5 and 17(a).

### C. Materiality of False Statements

The Court also finds that summary judgment is not appropriate as to the materiality of the misrepresentations. "The test for determining materiality is whether a reasonable man would attach

importance to the fact misrepresented or omitted in determining his course of action." SEC v. Carriba Air, Inc., 681 F.2d 1318, 1323 (11th Cir. 1982); see also SEC v. Morgan Keegan & Co., 678 F.3d 1233, 1245 (11th Cir. 2012)(a statement is material "if there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'")(quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). "The role of the materiality inquiry is 'to filter out essentially useless information that a reasonable investor would not consider significant, even as part of a larger "mix" of factors to consider in making his investment decision.'" Id. at 1246 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 234 (1988)).

Here, defendant asserts that the misrepresentations regarding the insurability of the loans backing the Radius MBS were not material. (Doc. #146, pp. 12-17; Doc. #152, pp. 5-6.)  In support, defendant relies exclusively on the declaration of Jim Hodgkins, account representative for Wachovia Securities, who on behalf of Wachovia purchased a number of the securities at issue in this case. (Id.)  In response, SEC argues that defendant has confused materiality with reliance, and that Mr. Hodgkin's declaration expresses his subjective belief, which is irrelevant to the objective "reasonable investor" standard. (Doc. #147, pp. 14-15.)

The Court finds that there remains a genuine issue of material fact as to whether the false representations were material. Therefore, summary judgment will be denied as to this issue.

**D.    Defendant's Control of Radius**

Defendant asserts that after his wife passed away on December 7, 2005 that "he was not really in control of Radius," and in support cites to his own deposition testimony and the testimony of former Radius employees Elizabeth Torres and Rebecca Marcelo. (Doc. #146, pp. 17-20.)  In response, SEC argues that defendant remained president and chief executive officer of Radius, as well as its sole owner, officer, and director. (Doc. #147, pp. 15-17.) In addition, SEC argues that defendant did not appoint anyone to take over his duties after December 2005 and had final say on all loan underwriting decisions and all aspects of the Radius MBS. (Id.)  In his Reply, defendant argues that the testimony SEC cites is misleading, inaccurate, and out of context. (Doc. #152, pp. 6-8.)  The Court finds there are disputed issues of material fact as to defendant's control of Radius during the relevant time period. Therefore, summary judgment must be denied as to this issue.

**E.    Defendant's Scienter**

Defendant argues that SEC has failed to show that the acts were done with scienter, an "intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). "Scienter may be established by a showing of knowing misconduct or

severe recklessness." SEC v. Carriba Air, Inc., 681 F.2d at 1324. Recklessness requires a showing of conduct that was an extreme departure from standards of ordinary care which presented a danger of misleading buyers or sellers that either was known or was so obvious that the company must have been aware of it. Id. (citing SEC v. Southwest Coal & Energy Co., 624 F.2d 1312, 1321 (5th Cir. 1980)).

Here, defendant asserts a number of reasons for why he did not act with scienter, including: (1) that he was not in actual control of Radius during the relevant time period; (2) his wife's death meant that he lost his head underwriter and quality control manager; (3) Ginnie Mae's seizure of Radius' files in October 2006 did not allow Radius to submit the loan files for insurance; and (4) that Ginnie Mae lost many of the loan documents after the seizure. (Doc. #146, pp. 21-25; Doc. #152, pp. 9-10.) SEC responds, relying on Ms. Garner's expert report, that the loans backing Radius MBS were ineligible for FHA insurance and that defendant's statement to the contrary was "intentionally, recklessly, or, at a minimum, negligently false." (Doc. #147, pp. 17-19.) Also, in support, SEC cites to the deposition transcripts for evidence that defendant knew of the Ginnie Mae requirements and purposely disregarded them. (Id.) After drawing all possible inferences in favor of the SEC, the Court finds that there remains

disputed issues of material fact as to defendant's scienter. Therefore, summary judgment must be denied as to this issue.

Accordingly, it is now

**ORDERED**:

Defendant's Second Amended Motion for Summary Judgment (Doc. #146) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>24th</u> day of January, 2013.

_____
JOHN E. STEELE
United States District Judge

Copies:
Pro se parties
Counsel of record